UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

MARK K.,

      Plaintiff,

v.

NANCY A. BERRYHILL,
**Deputy Commissioner for Operations performing the duties and functions not reserved to the Commissioner of Social Security,**

      Defendant.

Case No. 17-2094

REPORT AND RECOMMENDATION

Plaintiff Mark K. seeks review under 42 U.S.C. § 405(g) of the Social Security Administration's denial of his application for disability insurance benefits. The parties filed cross motions for summary judgment. For the reasons explained below, the Court recommends that Plaintiff's Motion for Summary Judgment **(#8)** be **DENIED**, Defendant's Motion for Summary Judgment **(#13)** be **GRANTED**, and the decision to deny benefits be affirmed.

I.      Background

On July 16, 2012, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning May 29, 2010. Plaintiff's claim was denied initially and on reconsideration. Plaintiff sought appeal and an Administrative Law Judge (ALJ) issued an unfavorable decision on May 16, 2014. (R. 208-222.) The Appeals Council vacated the 2014 decision and remanded the case back to the ALJ for further consideration. (R. 228-231.) The Appeals Council directed the ALJ to evaluate the opinion of Plaintiff's treating physician, Dr. Mandhan, and the portion of the record containing correspondence from Plaintiff's mother describing his limitations. (R. 23, 228-231.)

On remand, Plaintiff was represented by a non-attorney representative when he appeared and testified before a second ALJ on October 7, 2015. During the hearing, the ALJ heard testimony from an impartial vocational expert (VE). On January 16, 2016, the ALJ issued an unfavorable decision. (R. 23-36.)

The ALJ found that Plaintiff has the severe impairments of seizure disorder, bipolar disorder, and cognitive disorder (R. 26.); (20 CFR 404.1520(c)). The ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 27.); (20 CFR 404.1520(d), 404.1525 and 404.1526). Additionally, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform medium work as defined in 20 CFR 404.1567(c) except:

> he can tolerate only occasional exposure to unprotected heights and moving machinery, and can tolerate only occasional exposure to noise at a moderate volume level; he can only occasionally operate a motor vehicle; further, he is limited to work that consists of the performance of simple and routine tasks, he is limited to no more than frequent interaction with supervisors, occasional interaction with co-workers, and no interaction with the public; and finally, he requires work that allows him to be off task up to 10% of the workday, and to be absent one day per month.

(R. 29.) The ALJ found that through the date last insured, Plaintiff was capable of performing past relevant work as a welder. (R. 34.) The Appeals Council denied Plaintiff's request for review making the ALJ's ruling the Commissioner's final decision.

II.   **Standard of Review**

In reviewing the ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial evidence. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Stated differently, if reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the

ALJ's decision to deny benefits. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). Importantly, for the Court to evaluate the ALJ's analysis, the ALJ must build a "logical bridge from the evidence to his conclusion." *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

### III. Analysis

#### a. Opinion Evidence

Plaintiff argues that the ALJ erred in weighing the medical opinion evidence. Specifically, Plaintiff argues that the opinions of Plaintiff's treating psychologist Dr. Gillen, treating psychiatrist Dr. Bashir, treating neurologist Dr. Shyu, and treating physician Dr. Mandhan were improperly afforded little or no weight. A treating source's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [one's] case record." 20 CFR 404.1527(c)(2). "An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). However, "[i]f the ALJ discounts the physician's opinion after considering these factors, we must allow that decision to stand so long as the ALJ 'minimally articulate[d]' his reasons . . . " *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)(internal citations omitted).

The ALJ adopted the previous ALJ's determination that the opinions of Dr. Bashir and Dr. Gillen were not entitled to controlling weight based on objective medical evidence. As an initial matter, the ALJ rejected both doctors' conclusion that Plaintiff was disabled as that determination is reserved for the Commissioner. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000), as amended (Dec. 13, 2000); *See also* 20 CFR 404.1527(d)(1).

Additionally, the ALJ noted that both doctors relied on Plaintiff's statements that he regularly had seizures when determining the severity of Plaintiff's cognitive deficit. (R. 30-31, 217.) The Seventh Circuit has noted that an ALJ may consider medical opinions based on a claimant's "own statements about his functional restrictions" to be "less significant." *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). Moreover, the ALJ reasonably found that the objective medical evidence in the record indicates that Plaintiff's description of his seizure activity was inaccurate. The ALJ discussed normal results from two CT scans and an MRI of Plaintiff's brain. (R. 31, 215, 737, 745, 908.) The ALJ further noted that Plaintiff was seizure

free when he took his medication. (R. 31, 215, 217-218, 621, 861, 863, 936, 1050.) Despite telling the doctors he had seizures daily, Plaintiff had only one medically determinable instance of seizure activity between the alleged onset date and the first ALJ decision. However, blood tests indicated that Plaintiff's Tegretol level, the level of his anti-seizure medication, was below the therapeutic range at the time of the incident. (R. 31, 215, 216-217, 730, 734.) The ALJ minimally articulated her reasons for giving the medical opinions little weight based on Plaintiff's inaccurate description of his seizures.

Plaintiff additionally contends that there is no evidence that Dr. Bashir and Dr. Gillen based their opinions on inaccurate descriptions of his seizure activity. Plaintiff asserts that these physicians' opinions on his mental limitations were instead based on psychological testing. The ALJ found that Dr. Bashir's mental limitation testing "yielded inconsistent results." (R. 218). For example, each physician gave a global assessment of functioning score (GAF) of 25, but at an examination on September 24, 2012, Dr. Bashir gave him a GAF of 55 (moderate limitation in functioning); and most recently, on February 10, 2014, the GAF was 54. (R. 218, 1062, 1064).

The Seventh Circuit has noted that GAF scores are used for planning treatment. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). GAF scores, however, do not reflect the clinician's opinion of functional capacity. *Id.* Accordingly, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Id.* (emphasis added). Rather than rely on an unexplained numerical score assigned, the ALJ's decision can be supported by the narrative findings of the clinician. *Id.*

Here, the ALJ noted the inconsistencies between the GAF scores the physicians assigned. Even assuming that the GAF of 25 was correct, the ALJ is not required to determine Plaintiff's disability based entirely on his GAF score. Rather, the ALJ expressly noted the inconsistencies in the physicians' opinions and considered that their opinions were largely based on Plaintiff's subjective complaints. *Diaz*, 55 F.3d at 308. The ALJ thus articulated her reasons for discounting the psychological testing analysis.

Plaintiff also argues that the ALJ improperly discounted the opinions of Dr. Bashir and Gillen based on the stability of his bipolar disorder. "Where the medical evidence in the record indicates that a mental condition is treatable and controlled by medication, or that a psychiatric condition has been stabilized, the ALJ may consider that evidence." *Baca v. Astrue*, 2013 WL 5431411 (C.D. Ill. 2013) (citing *Pepper v. Colvin*, 712, F.3d 351, 366 (7th Cir. 2013). As the ALJ pointed out, Dr. Bashir commented that while Plaintiff had problems with the effectiveness of his seizure medication, his bipolar disorder had been relatively stable across time. (R. 218, 1021) (R. 643, Dr. Gillen noting that observed problems were not due to Plaintiff's bipolar disorder.) The ALJ afforded little weight to the opinions of Dr. Bashir and Dr. Gillen, both of whom focused on Plaintiff's perceived cognitive limitations stemming from his alleged seizures. Therefore, the ALJ properly discussed the stability of Plaintiff's bipolar disorder to the extent it was relevant to the potential aggregate limiting effects of Plaintiff's conditions. Moreover, the ALJ appropriately considered the effectiveness of medication in mitigating the symptoms of Plaintiff's ailments.

Plaintiff next argues that, in the alternative, even if the ALJ properly determined that the opinions of Dr. Bashir and Dr. Gillen were not entitled to controlling weight, the ALJ erred by not affording their opinions more weight based on the factors listed under 20 CFR 404.1527. "The ALJ can weigh evidence and make judgments as to what evidence is most persuasive." *Farrell v. Sullivan*, 878 F.2d 985, 989 (7th Cir. 1989). As already discussed extensively, the ALJ gave examples of how both physicians' opinions on the extent of Plaintiff's limitations were not adequately supported and were inconsistent with the record. 20 CFR 404.1527(c)(3); 20 CFR 404.1527(c)(4).

Plaintiff also contends that the ALJ erred by not assigning more weight to the treating neurologist, Dr. Shyu, and treating physician, Dr. Mandhan. Specifically, Plaintiff claims that the ALJ placed undue influence on the fact that the doctors are not mental health specialists without considering the other factors listed under 20 CFR 404.1527.

The ALJ adopted the determination of the previous decision that Dr. Shyu's opinion was entitled to no weight. First, the ALJ rejected Dr. Shyu's conclusion that Plaintiff was unable to work, a determination that is reserved for the Commissioner. Second, Dr. Shyu, a

5

specialist in neurology, concluded that Plaintiff's problems with concentration were related to his bipolar disorder. (R. 919.) Not only did the ALJ recognize that Dr. Shyu's analysis of Plaintiff's limitations went outside of the scope of his specialty, the ALJ also determined that the suggested limitations were inconsistent with Dr. Shyu's examination reports. 20 CFR 404.1527 (c)(3); 20 CFR 404.1527 (c)(4); 20 CFR 404.1527 (c)(5); (R. 218.) (See R. 618-628, 745, 838, 852, 875, 1047-1051, showing examples from Dr. Shyu's reports which contradict the limitations suggested.)

Dr. Mandhan's opinion was considered on remand by the second ALJ. The ALJ concluded that the medical source statements (MSS) completed by Dr. Mandhan were not credible and not entitled to any weight. (R. 32.) The ALJ noted inconsistencies in the limitations suggested by Dr. Mandhan and did not rely, as Plaintiff alleges, on the fact that Mandhan is not a mental health specialist without considering the other factors listed under 20 CFR 404.1527. The ALJ determined that Dr. Mandhan's suggested limitations on Plaintiff's ability to stand and sit were contradicted by other portions of the doctor's opinion. (R. 32, 672, 673, 674.) The ALJ also noted that Dr. Mandhan suggested limitations based on a previously unmentioned rotator cuff injury. (R. 32, 676.) Moreover, the ALJ reasoned that Dr. Mandhan's statements about how much Plaintiff could lift and potential fatigue were internally inconsistent. (R. 32, 672-674.)

The ALJ further determined that medical source statements completed at later dates by Dr. Mandhan were unsupported by the record and contradicted his previous reports and opinions. (R. 32, 675, 923-925 epilepsy report by Dr. Mandhan, 926-929 psychiatric report by Dr. Mandhan.) The ALJ discussed a Psychiatric Report in which Dr. Mandhan opined serious limitations but stated that the claimant had a completely normal mental status exam. (R. 926-929.)

After completing an analysis of several medical source statements by Dr. Mandhan over time, the ALJ noted that Dr. Mandhan was not Plaintiff's primary care provider for mental health disorders or seizure disorder. Rather, Dr. Mandhan referred Plaintiff to seizure and mental health specialists. (R. 32, 714.) Ultimately, the ALJ determined that Dr. Mandhan's medical source statements were entitled to no weight because the opinions of

Dr. Mandhan were internally inconsistent and the limitations suggested were not warranted by facts in the record. (R. 32.); 20 CFR 404.1527(c).

Additionally, Plaintiff argues that the ALJ erred in assigning the greatest amount of weight to the state agency psychologists. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p. The ALJ is required by 20 CFR §§ 404.1527(f) and 416.927(f) to consider the state agency physicians' findings about the nature and severity of the claimant's impairment as opinions of non-examining physicians; while the ALJ is not bound by the opinion, he may not ignore it either, but must consider it and explain the weight given to the opinion in his decision. *Id.*

Here, the ALJ expressly noted that the state agency consultants were correct in their conclusion that Plaintiff had significant cognitive limitations. (R. 30). The ALJ found, however, that they were not consistent about tying those significant cognitive limitations to Plaintiff's RFC. Therefore, the ALJ gave these opinions "some, but not significant weight." Moreover, the ALJ expressly rejected the evaluators conclusion that Plaintiff had no exertional limitation due to his impairments (a finding that otherwise would have been detrimental to Plaintiff). The ALJ thus articulated her reasons for giving "some, but not significant weight" the state agency examiners.

### b. Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly evaluate his credibility. "This court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhart*, 390 F. 3d 500, 504-05 (7th Cir. 2004.). On March 28, 2016, the agency issued SSR 16-3p, which provided new guidance regarding how a claimant's statements about the intensity, persistence and limiting effects of symptoms are to be evaluated. On October 25, 2017, the Agency republished SSR 16-3p to clarify that the ruling is effective March 27, 2017, and does not apply retroactively. *See* 82 F.R. 49462-63. The Agency stated further that it expects courts to apply the rules that were in effect at the time the ALJ issued the decision. *Id.* Thus, the former SSR 96-7p governed the ALJ's subjective symptom analysis.

7

Pursuant to SSR 96-7p, "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."

Moreover, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The Court will affirm the ALJ's credibility finding so long as the ALJ "gives specific reasons that are supported by the record." *Skarbek*, 390 F. 3d at 505.

Plaintiff first points to the ALJ's use of boilerplate language, which the Seventh Circuit has found to be "meaningless." *Parker v. Astrue*, 597 F. 3d 920, 927 (7th Cir. 2010). As the Seventh Circuit has found, however, "use of boilerplate is innocuous when the language is followed by an explanation for rejecting the claimant's testimony." *Schomas v. Colvin*, 732 F. 3d 702, 708 (7th Cir 2013). Here, the ALJ introduced her credibility discussion with standard boilerplate language. The ALJ, however, went on to provide a detailed analysis of Plaintiff's credibility, and therefore the use of boilerplate language does not amount to reversible error.

Plaintiff also argues that the ALJ erred in considering the activities of daily living (ADLs) when making her determination. Although the Seventh Circuit has held that the ALJ should not place undue weight on a claimant's daily activities in assessing his ability to work full-time, *see Day v. Astrue*, 334 Fed. Appx. 1, 8 (7th Cir. 2009), the Regulations specifically instruct the ALJ to consider the plaintiff's daily activities. 20 C.F.R. § 404.1529(c)(3)(i). The ALJ noted that Plaintiff admitted that he performed his own care and hygiene, took care of his dog until he died, prepared simple meals, mowed the lawn, and took out the trash. (R. 28; R. 33). The ALJ, however, did not determine that Plaintiff was able to work full-time based on his ability to mow the lawn or prepare simple meals. Rather,

the ALJ (as the Regulations mandate) considered Plaintiff's activities of daily living in determining whether Plaintiff's symptoms were as severe as he subjectively alleged. (R. 33). This is exactly what the Regulations require. 20 C.F.R. § 404.1529(c)(3)(i).

Finally, the Court notes that the ALJ's credibility determination contains specific reasons for her findings. While Plaintiff testified that he was totally disabled, the ALJ noted Plaintiff's own testimony that he had a driver's license and occasionally drove between 28-30 miles away to see a friend twice a month, and noted several activities of daily living as already discussed. (R. 33). The ALJ also pointed to several normal examination notes in the medical records. *Id.* As previously discussed, the ALJ also noted the medical opinions in the record were based largely on Plaintiff's subjective complaints. *Id.* In short, the ALJ articulated her reasons for the credibility findings, and the Court does not find that the ALJ's credibility determination is "patently wrong." *Skarbek*, 390 F. 3d at 504.

### IV. Conclusion

For these reasons, the Court recommends that Plaintiff's Motion for Summary Judgment **(#8)** be **DENIED**, Defendant's Motion for Summary Judgment **(#13)** be **GRANTED**, and that the decision to deny benefits be affirmed. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 31st day of August, 2018.

s/ ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE
